# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**BENNIE LEE COFER,** :
:
      **Plaintiff,** :
:    **CIVIL ACTION FILE NO.**
**v.** :
:    **1:07-CV-1719-AJB**
**MICHAEL J. ASTRUE,** :
***Commissioner of Social*** :
***Security Administration,*** :
:
      **Defendant.** :

## O R D E R   A N D   O P I N I O N [1]

Plaintiff Bennie Lee Cofer brought this action pursuant to §§ 205(g) and

1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of the Social Security

Administration ("the Commissioner") partially denying his application for Period of

Disability and Social Security Disability Benefits ("DIB").[2] For the reasons set forth

below, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [Doc. 18]. Therefore, this Order constitutes a final Order of the Court.

[2] Title II of the Social Security Act provides for federal disability insurance benefits. 42 U.S.C. § 401, *et seq.*

## I.    Procedural History

Plaintiff initially filed an application for DIB on October 1, 2003, alleging disability commencing on February 22, 2002.  [Record (hereinafter "R") 52-54].  The application was denied initially, [R47-51], and on reconsideration.  [R42-46].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R41].  An evidentiary hearing was held on August 7, 2006, [R463-89], which resulted in a "Notice of Decision-Partially Favorable," dated August 22, 2006, awarding Plaintiff a closed period of disability from February 22, 2002 through November 30, 2003, but finding that beginning on December 1, 2003, Plaintiff experienced medical improvement and had the residual functional capacity ("RFC") to perform a range of sedentary work.  [R16-23].  Plaintiff then requested review by the Appeals Council.  [R11].  The Appeals Council denied the request, concluding that there was no basis under the regulations for review, thereby making the ALJ's decision the final decision of the Commissioner.  [R4-6].

Plaintiff, having exhausted all administrative remedies, filed this action on July 6, 2007.  [Doc. 2].  The Commissioner filed the transcript of the administrative proceedings on November 16, 2007.  [Doc. 11].  The matter is now before the Court

AO 72A
(Rev.8/8
2)

upon the administrative record, the parties' pleadings, briefs and oral argument, and is ripe for review.

## II.    Plaintiff's Contentions

As set forth in Plaintiff's brief, the issues to be decided are as follows:

1.    The Administrative Law Judge did not pose a hypothetical question to the vocational expert which comprised all of the claimant's impairments.

2.    The Administrative Law Judge did not state specific reasons for rejecting the pain testimony of the claimant.

3.    The Administrative Law Judge erred in finding that significant numbers of jobs exist in the national economy.

4.    The Appeals Council erred by failing to remand Mr. Cofer's case for further proceedings on the basis of new evidence showing that he cannot sustain any substantial gainful activity.

[Doc. 14 at 1].

Upon review of the Plaintiff's arguments, issue 1 appears to relate to evidence submitted only to the Appeals Council. [*See* Doc. 14 at 6 ].  Therefore, these arguments will be considered in analyzing whether the Appeals Council erred by not remanding Plaintiff's case back to the ALJ for consideration of new evidence.  In addition, issue 2 relates, in part, to whether the hypothetical proffered to the vocational expert ("VE")

adequately comprised all of Plaintiff's impairments and, thus, will be addressed as a separate argument.

## III.     Statement of Facts

### A.     Factual Background

Plaintiff was born on April 10, 1960, and was 46 years old at the time of the administrative evidentiary hearing. [R52]. He has an eleventh grade education. [R467]. His previously worked as a truck driver and fork lift operator. [R474]. Plaintiff alleges disability based on a severe bicondylar[3] tibial plateau fracture. [R91, 301].

### B.     Medical Records

The medical evidence is comprised of records from (1) Dr. David A. Goodman from March 2002 to December 2003, (2) Healthfield, Inc. from June 2003 to August 2002, (3) Dr. Richard Prokesh from June 2002 to November 2002, (4) Fayette Resurgens Orthopaedic from December 2004 to August 2006, (5) Dr. Latasha Rashad

---

[3]     A bicondylar joint is a synovial joint (opposing bony surfaces covered with a layer of cartilage) in which two more or less distinct, rounded surfaces of one bone articulate with shallow depressions on another bone. http://medical-dictionary.com/dictionaryresults.php (last visited September 22, 2008).

4

from October 2005 to June 2006, (6) Grady Memorial Hospital on July 5, 2006 and (7) Community Medical Center from October 2005 to June 2006.

Review of these records discloses that Dr. Goodman treated Plaintiff for a leg fracture near Plaintiff's knee. [R121-51, 358-65, 408-30]. During his initial evaluation, Dr. Goodman noted that Plaintiff had an open reduction with hybrid external fixator placement without problem on February 22, 2002. [R136]. Plaintiff was supposed to perform pin care twice a day, but only performed it once a day. As a result, Dr. Goodman was concerned that he would develop an infection. [*Id.*].

On April 4, 2002, Dr. Goodman completed an evaluation form regarding Plaintiff's current condition. [R389-91]. He observed that Plaintiff could sit for eight hours, stand for two hours, and walk for one hour. [*Id.*]. He further stated that Plaintiff could occasionally lift up to 10 pounds. [*Id.*]. Finally, he stated that Plaintiff was "temporarily" disabled but could return to work doing sedentary duty. [*Id.*].

On April 8, 2002, Plaintiff reported that he was doing much better. [R133]. X-rays showed that his fracture was in good alignment. [*Id.*]. On May 6, 2002, an X-ray revealed some healing. [R132]. Dr. Goodman planned to leave the pins in place for an additional three weeks and then put in an internal fixation. [*Id.*]. However, before

5

the internal fixation could be performed, Plaintiff developed osteomyelitis.[4]  He

underwent surgery to debride the infection and was given a course of antibiotics.

[R129-30].  Plaintiff then had bone grafting and internal plating to promote union of

one of the fractures.  [R128-29].

On September 6, 2002, Plaintiff reported to Dr. Goodman that his pain had

markedly improved and stated that he only had occasional episodes of pain.  [R127].

Examination revealed only mild effusion,[5] a range of motion of 3-95 degrees, and no

instability.  [*Id.*].  X-rays revealed that the fractures were healing with no evidence of

non-union.  [*Id.*].  On October 18, 2002, Plaintiff reported that he was doing very well

with no real problems and was attending physical therapy.  [R126].  Examination

revealed a touch of warmth and mild effusion with no pain or instability.  [*Id.*].  X-rays

---

[4]        Osteomyelitis is a bone infection, usually caused by bacteria, that can be
either acute or chronic.  This disorder usually occurs as a result of an infection in one
part of the body that is transported through the bloodstream to a bone in a distant
location.  http://www.webmd.com/a-to-z-guides/osteomyelitis-10585 (last visited
September 23, 2008).

[5]        Effusion is the escape of a fluid from anatomical vessels by rupture or
e x u d a t i o n .    M d e l i n e P l u s   M e d i c a l   D i c t i o n a r y ,
http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=Effusion,
last visited September 23, 2008).

AO 72A
(Rev.8/8
2)

revealed healed fractures. [*Id*.]. Dr. Goodman advised that Plaintiff "is sent back to a sedentary type position at this time." [*Id*.].

On November 15, 2002, Plaintiff complained to Dr. Goodman of pain in his knee when using the clutch on a truck. [R125]. Plaintiff was noted to have swelling in his knee following physical therapy. Physical examination and x-rays showed that Plaintiff's knee was stable. His range of motion was 0-100 degrees. Dr. Goodman told Plaintiff to continue physical therapy and not to use a clutch until December 2, and then could return to driving. Plaintiff was advised he could continue to perform sedentary work. [*Id*.].

On November 22, 2002, Dr. Lee Diamond indicated that Plaintiff's osteomyelitis was resolved. [R329].

On December 16, 2002, Plaintiff reported to Dr. Goodman that he was doing better. [R124]. Examination showed mild effusion and no instability. [*Id*.]. Plaintiff's range of motion was 0-105 degrees, and Dr. Goodman indicated that Plaintiff could perform light work with the previously imposed restrictions. [*Id*.].

On February 17, 2003, Plaintiff reported only mild discomfort. [R123]. Examination showed no instability and Plaintiff's range of motion was 3-85 degrees. [*Id*.]. Dr. Goodman reported that Plaintiff had reached maximum medical

AO 72A
(Rev.8/8
2)

improvement, had a disability rating of 35%, and would need to continue to be seen to evaluate arthritic progression. [*Id.*]. Dr. Goodman also opined that Plaintiff may need a knee arthroplasty[6] in the future. [R123]. Dr. Goodman advised that Plaintiff could perform a sedentary type position with intermittent standing, and that Plaintiff could lift up to 20 pounds with more frequent lifting of 10 pounds. [*Id.*]. Plaintiff was not to drive trucks, or climb ladders, kneel, or squat. [*Id.*].

On April 4, 2003, Dr. Goodman completed an assessment form regarding Plaintiff's current condition. [R396-98]. He advised that Plaintiff could sit for eight hours, stand for two hours, and walk for one hour. [R397]. He also stated that Plaintiff could occasionally lift and carry up to 10 pounds, but could not bend, squat, crawl, climb, or be exposed to heights or moving machinery. [R397-98]. Dr. Goodman stated that Plaintiff could not be on unprotected heights or be around moving machinery. [R398].

On August 8, 2003, Plaintiff reported that he was doing very well and walking, although he could not run and had trouble with stairs. [R122]. Examination showed

---

[6] Arthroplasty is defined as surgery to relieve pain and restore range of motion by realigning or reconstructing a joint. http://medical-dictionary.thefreedictionary.com/arthroplasty (last visited September 24, 2008).

AO 72A
(Rev.8/8
2)

no effusion or knee instability, and x-rays reflected a healed fracture with some arthritic changes. [*Id.*]. Plaintiff was to remain on sedentary duty. [*Id.*].

On December 18, 2003, non-examining state agency physician Dr. S. Wright[7] completed a current Residual Functional Capacity ("RFC") assessment on Plaintiff. [R342-49]. Dr. Wright concluded that Plaintiff could stand or walk less at least two hours and could sit for a total of six hours in an eight hour work day, [R343]; never climb ladders, ropes or scaffolds; occasionally climb, balance, kneel, crouch or crawl; and frequently stoop. [R344]. Dr. Wright further stated that Plaintiff was to avoid all hazards, such as machinery and heights, [R346], and found Plaintiff's allegations of partial disability, limited mobility, and that he could no longer drive, to be credible. [R347]. Dr. Wright gave great weight to Dr. Goodman's February 17, 2003, assessment that Plaintiff could return to a sedentary type position with restrictions, and that Plaintiff had a 35% lower body extremity disability rating. [R348].

On December 21, 2003, Dr. Goodman noted that Plaintiff had no problems and minimal pain. [R121]. Plaintiff's range of motion was "excellent" at 0-110 degrees, and he had no instability in the knee. Dr. Goodman advised that Plaintiff could continue with the same work restrictions. [*Id.*].

---

[7]     Dr. Wright's first name is not listed in the record.

AO 72A (Rev.8/8 2)

On March 9, 2004, non-examining state agency physician Dr. John Hassinger completed a current RFC assessment on Plaintiff. [R350-56]. Dr. Hassinger concluded that Plaintiff could frequently lift ten pounds and occasionally lift up to twenty pounds and sit or stand for approximately six hours in an eight hour work day. [R351]. Dr. Hassinger noted that Plaintiff could never climb ladders, ropes or scaffolds; occasionally climb stairs, stoop, kneel, crouch or crawl; and frequently balance. [R352]. In addition, he stated that Plaintiff was to avoid moderate exposure to vibration and all exposure to hazards such as machinery and heights. [R354]. Dr. Hassinger found Plaintiff's complaints of pain and swelling to be credible and that Dr. Goodman's February 17, 2003, assessment of Plaintiff's condition should be given considerable weight. [R355-56].

On December 27, 2004, Plaintiff reported minimal pain to Dr. Goodman. [R364]. Dr. Goodman noted that physical therapy was helping, and that Plaintiff had no effusion in his knee. Dr. Goodman advised that Plaintiff was "to continue his light duty job." [*Id.*].

On April 25, 2005, Plaintiff reported to Dr. Goodman that he was doing well and that his knee only bothered him from "time to time." [R408]. Examination showed good alignment and stability with minimal swelling. X-rays revealed well-healed

10

AO 72A
(Rev.8/8
2)

fractures and Dr. Goodman indicated that Plaintiff was doing "remarkably well at this time for such a severe injury" but would likely need total knee arthroplasty "hopefully many years" in the future. [*Id*.]. Dr. Goodman advised that Plaintiff would be unable to return to his past work as a truck driver. [*Id*.].

On October 31, 2005, plaintiff reported that he had only occasional soreness in his leg and no new problems. [R358]. Examination revealed minimal swelling, at most, and no instability. X-rays revealed a narrowing of the medial joint line. [*Id*.]. Dr. Goodman advised that Plaintiff could do work that did not require standing more than two hours a day, squatting, kneeling, or climbing. [R363].

On August 28, 2006, Dr. Goodman indicated that Plaintiff should alternate sitting and standing but could walk for short distances. [*Id*.]. He further indicated that Plaintiff would not need to elevate his leg. [R427].

On September 11, 2006, Dr. Goodman completed a RFC assessment of Plaintiff's condition. [R404-07]. He concluded that Plaintiff had moderate pain that increased with any weight bearing activity and had positive range of motion 0-90 degrees, [R404]; would occasionally experience pain or other symptoms during a typical workday severe enough to interfere with Plaintiff's attention and concentration needed to perform simple work tasks, but that he was capable of low stress jobs; could

AO 72A
(Rev.8/8
2)

sit or stand for one to two hours at a time, but could stand/walk less than two hours out of an eight hour work day, [R405-06]; would need to walk every 90 minutes for 10 minutes, shift positions at will from sitting, standing or walking; occasionally take unscheduled breaks and on prolonged sitting, he should elevate his leg; and could frequently lift and carry less than 10 pounds and occasionally carry or lift up to 10 pounds a time. [R406]. Dr. Goodman also reported that Plaintiff could frequently twist, rarely stoop (bend) or crouch/squat, and never climb stairs or ladders. [R407]. Finally, Dr. Goodman stated that Plaintiff might be out of work three days of every month as a result of his impairment or treatment. [*Id.*].

Plaintiff also has been treated for high blood pressure, diabetes, rectal bleeding, and abnormal liver functioning. [R366-88]. As discussed below, Plaintiff testified that only his leg pain cause him to be disabled. [R470].

C.     *Evidentiary Hearing before the ALJ*

Plaintiff was 46 years old at the time of the hearing. [R467]. He went to school until the eleventh grade. [*Id.*]. He testified that he has not worked since February 22, 2002, when he fractured his leg. [*Id.*]. Plaintiff explained that he cannot work because "I'm having a lot of pain, you know, every day. And I have to elevate my leg. . . And then sometimes I'm still having swelling. . . And it just- - sometimes it just hurts so

12

bad, you, I just can't stand up." [R469]. Plaintiff also testified that ". . . I could probably be able to sit down in, you know, in a sit down job. But it, you know, I'm having to much swelling and too much pain. And I'm frequently putting ice packs on my leg because, you know, like I say, it just keeps swelling. And I'm still taking, you know inflammation pills." [R470].

Plaintiff testified that he cannot walk very far, "maybe 100 yards or so." [R472]. He also testified that he can stand for 20 or 30 minutes and then he has muscle spasms in his legs and that he can only sit for a few minutes before he has to elevate his leg. [*Id*.]. Plaintiff further testified that he cannot lift more than ten pounds. [*Id*.].

The vocational expert ("VE") testified that Plaintiff's past relevant work was as a truck driver, which is semi-skilled work that Plaintiff performed at a heavy to very heavy level. [R483-84]. The VE also testified that Plaintiff had worked as a forklift operator, which is classified as medium, semi-skilled work. [R484].

The ALJ posed two hypotheticals to the VE. He first asked the VE whether a hypothetical person of Plaintiff's age, background, past relevant work history and who was capable of lifting ten pounds frequently, twenty pounds occasionally, could sit, stand or walk two hours in an eight hour day, sit six hours in an eight hour day, and could push and pull within those weight limitations, could perform Plaintiff's past

13

relevant work.  [R484].  The VE responded that such a person would not be capable of performing his past relevant work.  [*Id.*].

The ALJ then asked whether such a person would be capable of any work available in the national economy.  [R485].  The VE responded that such a person could perform the unskilled, sedentary work of production hand worker, grader or sorter, document preparer, and food an beverage order caller.  [*Id.*].

The ALJ then inquired whether a hypothetical person with the same characteristics, but was capable of carrying and lifting ten pounds occasionally, could sit eight hours in an eight hour work day, stand two hours and walk one hour, has no difficulty in grasping, pushing pulling, or performing fine manipulations with either hand and could type eight hours in an eight hour work day, was capable of performing the jobs previously named.  [R486].  The VE responded that such a person would be capable of performing those jobs given those limitations.  [R486].

On cross-examination, the VE testified that Plaintiff could not perform any work in the national economy if he could not bend or if he had to elevate his leg during the day.  [R487-88].

## IV.  ALJ's Findings of Facts

On August 22, 2006, the ALJ made the following findings of fact:

1.    The claimant met the insured status requirements of the Social Security Act as of February 22, 2002, the date the claimant became disabled.

2.    The claimant has not engaged in substantial gainful activity since February 22, 2002, the alleged onset date. (20 C.F.R. §§ 404.1520(b) and 404.1571, *et seq.*).

3.    At all times relevant to this decision, the claimant had the following severe impairment: bicondylar tibia fracture, with osteomyelitis and non-union (20 C.F.R. § 404.1520(c)).

4.    From February 22, 2002 through November 30, 2003, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)).

5.    After careful consideration of the entire record, the undersigned finds that, from February 22, 2002, through November 30, 2003, the claimant's residual functional capacity was diminished to less than sedentary work and he was unable to perform regular full time work.

6.    From February 22, 2002, through November 30, 2003, the claimant was unable to perform his past relevant work (20 C.F.R. § 404.1565).

7.    The claimant has been a younger individual at all relevant times (20 C.F.R. § 404.1563).

8.    The claimant has limited education and is able to communicate in English (20 C.F.R. § 404.1564).

15

AO 72A
(Rev.8/8
2)

9.      The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from November 22, 2002, through November 30, 2003 (20 C.F.R. § 404.1568).

10.     From February 22, 2002, through November 30, 2003, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that claimant could have performed (20 C.F.R. § 404.1560(c) and § 404.1566).

11.     The claimant was under a disability, as defined by the Social Security Act, from February 22, 2002, through November 30, 2003 (20 C.F.R. § 404.1520(g)).

12.     Medical improvement occurred as of December 1, 2003, the date the claimant's disability ended (20 C.F.R. § 404.1594(b)(1)).

13.     Beginning on December 1, 2003, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1594(f)(2)).

14.     After careful consideration of the entire record, the undersigned finds that, beginning on December 1, 2003, the claimant has had the residual functional capacity to perform a range of sedentary work (with lifting up to 10 pounds frequently and 20 pounds occasionally), with occasional postural limitations on balancing, crouching, and crawling and climbing ramps/stairs with prohibition climbing ladders/ropes/scaffolds; and avoid moderate exposure to vibration.

15.     The medical improvement that has occurred is related to the ability to work (20 C.F.R. § 404.1594(b)(4)(i)).

AO 72A
(Rev.8/8
2)

16.    Beginning on December 1, 2003, the claimant has been unable to perform past relevant work (20 C.F.R. § 404.1565)

17.    Beginning on December 1, 2003, transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, appendix 2).

18.    Beginning on December 1, 2003, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 C.F.R. § 404.1560(c) and § 404.1566).

19.    The claimant's disability ended on December 1, 2003 (20 C.F.R. § 404.1594(f)(8)).

[R19-23].

In conjunction with these findings, the ALJ determined that Plaintiff was entitled to a closed period of disability from February 22, 2002 through November, 30, 2003. [R23]. In making this determination, the ALJ discussed Plaintiff's medical records. [R19]. He noted that the medical records showed that Plaintiff's condition gradually improved. [R19-20].

The ALJ found that from February 22, 2002 through November 30, 2003, Plaintiff's subjective complaints regarding the limiting effects of his symptoms were "generally credible," but that Plaintiff's statements concerning the "intensity,

17

persistence and limiting effects" of his symptoms were not entirely credible beginning on December 1, 2003 [R19, 22]. The ALJ noted that the Plaintiff complained that he needed to keep his leg elevated during the day, but there was "no medical confirmation of this and no apparent medical basis for these complaints." [R22].

The ALJ observed that the VE found that a person with Plaintiff's background and RFC, as set out by state agency physician Dr. Hassinger, could perform the jobs of product handler, grader/sorter, document preparer, and food/beverage order clerk, jobs which existed in sufficient numbers in the regional and national economies. [R22-23]. The ALJ also observed that the VE stated Plaintiff could perform the same work even if Dr. Goodman's April 2, 2002, RFC were incorporated into the hypothetical. [R23]. Finally, the ALJ observed that Plaintiff's counsel posed a hypothetical to the VE, which added the assumption of no bending or squatting to which the VE replied that such a person could perform no work. [*Id.*]. The ALJ noted that there was no evidence to support such a hypothetical because there was no evidence that Plaintiff had a complete inability to bend. [*Id.*].

As a result, the ALJ found that Plaintiff was entitled to social security benefits only for the period beginning on February 22, 2002, and ending on December 1, 2003. [*Id.*].

18

## V.     Standard for Determining Disability

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001);

*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. § 404.1520(c). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R. § 404.1520(d). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work. *See* 20 C.F.R. § 404.1520(e). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. § 404.1520(f). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

AO 72A
(Rev.8/8
2)

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

If the claimant is found disabled at any point in the process, the Commissioner must determine if the disability continues through the date of the decision. *See* 20 C.F.R. § 404.1594(f). At step one, the Commissioner must determine if the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the Commissioner will find that the claimant's disability has ended. *Id*.

At step two, the Commissioner must determine if the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1594(f)(2). If the claimant does, the disability continues. *Id*.

At step three, the Commissioner must determine whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). If medical improvement occurs, as shown by a decrease in medical severity, the Commissioner proceeds to step four. *Id*. If there

AO 72A
(Rev.8/8
2)

is no decrease in severity, there is no medical improvement and the Commissioner proceeds to step five. *Id.*

At step four, the Commissioner must determine whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4). If the medical improvement is not related to the claimant's ability to perform work, the Commissioner proceeds to step five. *Id.* If the claimant's medical improvement does relate to his ability to perform work, the Commissioner proceeds to step six. *Id.*

At step five, the Commissioner must determine if one of two groups of exceptions to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). If the first group of exceptions applies, the Commissioner proceeds to step six. *Id.* If the second group of exceptions applies, the Commissioner will determine that the claimant's disability has ended. *Id.* If neither group of exceptions applies, the claimant's disability continues. *Id.*

At step six, the Commissioner must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If the Commissioner determines that all of the claimant's current impairments in combination do not significantly limit his physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. *Id.* If the combination of

22

impairments does significantly limit the claimant's ability to perform basic work activities, the Commissioner proceeds to step seven. *Id.*

At step seven, the Commissioner will assess the claimant's residual functional capacity based on his current impairments and consider whether the claimant can perform his past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant can do such work, the Commissioner will find that the disability has ended. *Id.*

At step eight, the Commissioner will determine if the claimant can perform other work that exists in the national economy given the claimants residual functional capacity, age, education and past work experience. 20 C.F.R. § 404.1594(f)(8.) If the claimant can perform other work, he is not disabled. *Id.* If the claimant cannot perform other work, his disability continues. *Id.*

## VI. Scope of Judicial Review

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its

AO 72A
(Rev.8/8
2)

judgment for that of the Commissioner. If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

AO 72A
(Rev.8/8
2)

# VII. Analysis of Claims of Error

### A.    *Pain*

Plaintiff argues that the ALJ did not state specific reasons for rejected his subjective complaints of pain after December 1, 2003. [Doc. 14 at 6]. Specifically, the Plaintiff argues that the ALJ did not mention any of his pain related impairments in his decision, or in the hypothetical posed to the VE. [*Id*. at 7]. The Commissioner responds that the medical evidence does not support Plaintiff's complaints of pain. [Doc. 15 at 10-15].

In evaluating whether a Plaintiff is disabled based on a claimant's testimony regarding his pain or other subjective symptoms, the Eleventh Circuit's evaluates whether there is: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219,1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The ALJ need not cite to the pain standard so long as "his findings and discussion indicate that the standard was applied." *Wilson*, 284 F.3d at1225-26.

AO 72A
(Rev.8/8
2)

The pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility." *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1189 n.1 (N.D. Ala. 2006). Thus, "[i]f the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints." *James v. Barnhart*, 261 F. Supp. 2d 1368, 1372 (S.D. Ala. 2003). When a claimant's subjective testimony is supported by medical evidence that satisfies the pain standard, he may be found disabled. *Holt*, 921 F.2d at 1223. If the ALJ determines, however, that claimant's testimony is not credible, "the ALJ must show that the claimant's complaints are inconsistent with his testimony and the medical record." *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1368 (N.D. Ga. 2006). This credibility determination does not require the ALJ to cite to particular phrases or formulations, but it also cannot be a broad rejection so as to prevent the courts from determining whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

The Court concludes that the ALJ sufficiently considered the pain standard. First, the Court notes that contrary to Plaintiff's assertions, the ALJ did specifically mention Plaintiff's pain related impairments in his decision. The ALJ specifically found that Plaintiff alleged that his leg swelled and had a need to keep it elevated, but that after December 1, 2003, these complaints were inconsistent with the medical

AO 72A
(Rev.8/8
2)

evidence. [R22]. Second, although the ALJ does not cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard was applied. The ALJ specifically stated the following in his findings of fact:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible beginning on December 1, 2003.

> The claimant alleges that he cannot do sedentary work because his leg swells and he must keep [sic] but there is no medical confirmation of this and no apparent medical basis for these complaints.

[R22].

Here, the ALJ essentially found that Plaintiff: (1) had an underlying medical condition and (2) the condition was such severity that it could reasonably be expected to give rise to the pain. *See Dyer*, 395 F.3d at 1210. As a result, the Court concludes that the ALJ implicitly considered and applied the pain standard. *See East v. Barnhart*, 197 Fed. Appx. 899, 905 (11th Cir. 2006) (holding the ALJ did not err in applying the pain standard because "[i]t is clear from the ALJ's opinion as a whole that, although [claimant] had impairments that could reasonably be expected to produce the type of pain and other symptoms [claimant] alleged, the ALJ did not believe [claimant's] testimony as to the severity of her pain and other symptoms"); *see also Wilson*,

27

284 F.3d at 1226 (finding that the ALJ properly applied the pain standard even though he did not "cite or refer to the language of the three-part test."). Thus, the Court finds no reversible error because it is clear that the ALJ properly applied the pain standard.

Finally, the Court finds that the ALJ did not err in making the credibility determination. The ALJ rejected Plaintiff's subjective complaints because he found Plaintiff's complaints not to be credible beginning on December 1, 2003. This rejection of Plaintiff's credibility is appropriate. *See Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006) ("Applying the pain standard, the ALJ properly considered [claimant's] assessment of her pain level and found that it was not credible to the degree alleged because the objective evidence . . . did not confirm the severity of [claimant's] alleged limitations."); *Humphries v. Barnhart*, 183 Fed. Appx. 887, 890 (11th Cir. 2006) ("The ALJ must make credibility determinations when a claimant attempts to prove disability through her own testimony of subjective symptoms such as pain using a three-part 'pain standard' test.").

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's complaints of pain were not credible after December 1, 2003. Here, as pointed out by the Commissioner, Dr. Goodman's treatment notes show that Plaintiff's condition steadily improved following surgery for his severe leg fracture and following

28

his osteomyelitis infection. [R121-41, 358-65, 408-30]. For example, on September 6, 2002, Dr. Goodman noted that Plaintiff's pain had markedly improved and that he only had occasional episodes of pain. [R127]. On February 17, 2003, Dr. Goodman noted that Plaintiff was feeling only mild discomfort, had reached maximum medical improvement, and could return to sedentary work with restrictions. [R123]. On December 1, 2003, Dr. Goodman noted that Plaintiff had "no problems," "relatively minimal pain" and was to continue with his same work restrictions. [R121]. Finally, on October 31, 2005, Dr. Goodman noted that Plaintiff was experiencing no new problems and only had "occasional soreness in the knee." [R358]. This evidence supports the ALJ's determination that Plaintiff did not suffer from disabling pain after December 1, 2003.[8]

Accordingly, the Commissioner's decision is **AFFIRMED** on this claim.

B.    *Hypothetical Question to VE*

Plaintiff next argues that the hypothetical posed to the VE was incomplete because the ALJ did not incorporate Plaintiff's pain related complaints into the

---

[8]    The Court recognizes that Dr. Goodman's September 11, 2006, RFC evaluation places more limiting restrictions on Plaintiff than those described above. [*See* R404-07]. However, this evidence was only submitted to the Appeals Council. [R4-5, 7]. As discussed below, the Appeals Council properly discounted this evidence.

AO 72A
(Rev.8/8
2)

hypothetical posed to the VE. [Doc. 14 at 7]. The Commissioner responds that the medical evidence does not support Plaintiff's pain complaints. [Doc. 15 at 10].

The Court finds no error. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical which comprises all of the claimants impairments." *Wilson*, 284 F.3d at 1227 (citing *Jones*, 190 F.3d at 1229). However, an ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d. 1155, 1161 (11th Cir. 2004). For the reasons discussed above, the ALJ properly discounted Plaintiff's subjective complaints of pain as not credible after December 1, 2003, because such complaints were not consistent with the medical evidence. Dr. Goodman's treatment notes indicate that Plaintiff's condition steadily improved following his surgery and his bout with osteomyelitis. [R121-41, 358-65, 408-30]. Plaintiff's pain also steadily improved and by December 1, 2003, Plaintiff stated to Dr. Goodman that he had "relatively minimal pain," and on October 31, 2005, only had "occasional soreness in the knee." [*See* R121, 358]. Thus, the ALJ properly excluded Plaintiff's continued complaints of pain from the hypothetical posed to the VE.

Accordingly, the Commissioner's decision is **AFFIRMED** on this claim.

AO 72A
(Rev.8/8
2)

*C.    Significant Number of Jobs*

Plaintiff argues that the numbers of jobs identified by the VE that exist at Plaintiff's RFC of unskilled, sedentary work are not significant.  [Doc. 14 at 7]. The Commissioner responds that the number of jobs cited by the VE satisfies his burden of identifying significant numbers of jobs in the national economy that Plaintiff could perform because the VE specifically identified 750 jobs in Georgia and 24,000 jobs nationally.  [Doc. 15 at 14-15].

The burden is on the ALJ to provide evidence about the existence of other work in the national economy that a claimant can perform.  *Brooks v. Barnhart*, 133 Fed. Appx. 669 (11th Cir. 2005) (citing *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984)); *see also* 20 C.F.R. § 404.1512(g).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.  20 C.F.R. § 404.1566(a). The ALJ must articulate specific jobs that exist in national economy that a claimant can perform. *Brooks*, 133 Fed. Appx. at 670; *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). A claimant must show that he could not perform those jobs in order to prove disability. *Brooks*, *id.* (citing *Jones*, 190 F.3d at 1228).  The ALJ may satisfy this burden and provide this evidence through a VE's testimony.  *Id.* (citing *Philips v. Barnhart*,

AO 72A
(Rev.8/8
2)

357 F.3d 1232, 1240 (11th Cir. 2004)); *see also* 20 C.F.R. § 404.1566(e). The ALJ, not the VE, determines whether a specific number of jobs constitutes a significant number. 20 C.F.R. § 404.1512(g); *Dunaway v. Astrue*, No. 8:06-cv-1567-T-EAJ, 2008 WL 1897603, * 6 n.8 (M.D. Fla. Apr. 28, 2008); *see also Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (whether there are a significant number of jobs is a question of fact to be determined by a judicial officer); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1480 (9th Cir. 1989) (an expert's opinion about what constitutes a significant number of jobs is not relevant).

The ALJ did not err in finding that Plaintiff could perform other work that exists in significant numbers in the regional/national economy. Here, the ALJ specifically determined, based on the VE's testimony, that plaintiff could engage in work as (1) hand worker (250 jobs regionally and 8,000 nationally), (2) grader/sorter (100 jobs regionally and 3,000 nationally), (3) document preparer (100 jobs regionally and 3,000 nationally), and (4) food and beverage order caller (300 jobs regionally and 10,000 nationally). [R22]. The ALJ further noted that the VE testified that these jobs were only representative and not inclusive. [R22, 485]. Thus, the ALJ did not err in finding that there were a significant number of jobs which exist in the national economy which Plaintiff can perform. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)

AO 72A
(Rev.8/8
2)

(vocational expert's identification of 10,000 jobs in the national economy, and his testimony that additional jobs existed, was sufficient to show a significant number of jobs the plaintiff could perform); *see also Brooks*, 133 Fed. Appx. at 671 (ALJ's finding that 840 polisher, document preparer and bonder jobs constituted a significant number in the national economy was supported by substantial evidence); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (vocational expert's testimony that the plaintiff could perform small appliance repair where 174 jobs existed locally constituted substantial evidence of a significant number of jobs the plaintiff could perform).

Accordingly, the Commissioner's decision is **AFFIRMED** on this claim.

D.      *Appeals Council*

Plaintiff argues that the hypothetical question posed to the VE did not comprise all of his impairments. [Doc. 14. at 5-6]. Specifically, Plaintiff argues that the ALJ did not pose a hypothetical question to the VE which took into account the combined effect of his impairments as described by Dr. Goodman's assessments. *Id*. Plaintiff also argues that the Appeals Council failed to consider additional records from Dr. Goodman, Grady Memorial Hospital and Dr. Latasha Rashad, which required that Plaintiff's case be remanded to the ALJ. [*Id*. at 7-8]. The Commissioner responds that

33

the ALJ posed an accurate hypothetical to the VE because Dr. Goodman's treatment notes do not support a total limitation on Plaintiff's ability to bend/stoop or crouch, or a need to elevate his leg. [Doc. 15 at 10,14-15]. The Commissioner also argues that the ALJ's decision is supported by substantial evidence because he considered evidence that was similar to that submitted to the Appeals Council. [*Id.* at 16-17].

The Court notes that Plaintiff bases his entire argument regarding the hypothetical posed to the VE on an assessment that Dr. Goodman completed on September 11, 2006. [Doc 14 at 6]. In this assessment, Dr. Goodman states that with prolonged sitting, Plaintiff would need to elevate his leg, could occasionally lift ten pounds and rarely lift twenty pounds, and rarely stoop (bend) or crouch/squat. [R404-07]. This assessment was completed almost five weeks after the hearing before the ALJ and approximately three weeks after the ALJ issued his written opinion. [R15, 463]. Dr. Goodman's assessment was submitted only to the Appeals Council, and not the ALJ. [R4-5, 7].

Generally, a claimant is allowed to present new evidence at each stage of this administrative process. *See* 20 C.F.R. § 404.900(b); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260-61 (11th Cir. 2007). The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the

AO 72A
(Rev.8/8
2)

administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, *id.*; 20 C.F.R. § 404.970(b). When a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous[,]" pursuant to sentence four of § 405(g). *Bolen v. Astrue*, No. CA 07–516-C, 2008 WL 694712 (S.D. Ala. Mar. 12, 2008) (citing *Ingram*, 496 F.3d at 1262). Also, the new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 Fed. Appx. 738, 743-44 (11th Cir. 2008).

Here, Plaintiff's brief cites the standard for remand for consideration of new evidence under sentence six of the § 405(g). [Doc. 14 at 8]. To obtain a sentence six remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218-19 (11th Cir. 2001); *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988). However, a remand to the Commissioner is proper under sentence six only when new and material evidence that *was not*

AO 72A
(Rev.8/8
2)

incorporated into the administrative record comes to the attention of the district court. *See Ingram*, 496 F.3d at 1268 (emphasis added).

In this case, the additional medical records from Grady Memorial Hospital, Dr. Rashad, and Dr. Goodman fail to meet the criteria for a sentence six remand because these records are not new evidence that the Commissioner failed to incorporate into the administrative record. Rather, these additional records were properly submitted to the Appeals Council, which considered and incorporated these documents into the administrative record. [R7]. Therefore, these records may be the basis for a sentence four remand. *See Smith v. Social Security Admin.*, 272 Fed. Appx. 789, 802 (11th Cir. 2008) ("Because Smith submitted new evidence for the first time to the A[ppeals ]C[ouncil], which the A[ppeals ]C[ouncil] considered, it became part of the administrative record and the only basis for remanding her case would be a sentence four remand, not a sentence six remand."); *Hummel v. Astrue*, No. 8:06-cv-725-T-EAJ, 2007 WL 2492460, * 7 (M.D. Fla. Aug. 30, 2007) (where plaintiff argues that Appeals Council did not conduct meaningful review of case in which additional information was included in administrative record, sentence four, not sentence six, remand, was implicated).

36

AO 72A
(Rev.8/8
2)

In its notice denying review of the ALJ's decision, the Appeals Council stated the following: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." [R4-5]. The order of the Appeals Council contains Dr. Goodman's September 2006 RFC assessment; medical records from Dr. Goodman from April 25, 2005, and October, 31, 2005 through August 28, 2006; medical records from Grady Memorial Hospital; and medical records from Dr. Rashad at Community Medical Center. [R3, 7]. Thus, it appears that the Appeals Council reviewed the additional evidence submitted by Plaintiff's counsel and found that it did not warrant changing the administrative result. Therefore, under *Ingram*, the Court reviews whether the Appeals Council's decision to uphold the ALJ's partial denial of benefits is supported by substantial evidence in the record as a whole, including the additional records submitted to the Appeals Council. *Barclay*, 274 Fed. Appx. at 743 (citing *Ingram*, 496 F.3d. at 1266-67); *Hummel*, 2007 WL 2492460 at * 7 (same).

The Court concludes that the Appeals Council did not err in not remanding Plaintiff's case back to the ALJ for further proceedings, because the administrative record as whole contains substantial evidence to support the denial of benefits to

AO 72A
(Rev.8/8
2)

Plaintiff after December 1, 2003. First, Plaintiff's claims that the records from Grady and Dr. Rashad warrant a remand, are without merit. These medical records relate to Plaintiff's treatment for rectal bleeding, high blood pressure, diabetes, and abnormal liver functioning. [R366-88]. At the hearing before the ALJ, Plaintiff testified that only his leg pain and swelling causes him to be disabled.[9] [R470]. Thus, the decision

---

[9]     Specifically, Plaintiff testified as follows:

Q:     I have to ask you- - aside from the problems with your leg, was there anything- - is there anything else medically that's keeping you out of work besides your problem with your leg?

A:     Well, no sir, not really.  Just my leg basically.  And you know, I have high blood pressure and sometimes- - but that- - I mean, sometimes I get dizzy, but other than that- - well, actually, you know, at night sometimes I can't sleep because of the pain.  And then when I get up in the morning, I'm drowsy, and- - it's- -

Q:     Well, let me ask you this then.  If somebody could find you a sit-down type job, could you do it?

A:     Well, you know, basically if I did work like that, you know, and then if my leg swells up, you know- - if it pains, you know, I would have to leave, you know, because the pain is in my leg.  That's the only thing.  And if I don't have pain, then, yeah, I could probably be able to sit down, you know, in a sit-down job.

[R470].

38

AO 72A
(Rev.8/8
2)

to deny the request for review on this basis is supported by substantial evidence in the record as a whole.

Likewise, Plaintiff's claims regarding his ability to lift ten pounds only occasionally, rather than frequently, are rejected. The ALJ specifically asked the VE if the Plaintiff would be precluded from working if he could only occasionally lift ten pounds. [R486]. The VE testified that Plaintiff would still be able to perform the unskilled sedentary jobs identified. [*Id.*]. Thus, the Appeals Council decision not to remand this case back to the ALJ for consideration of this evidence is supported by substantial evidence.

Next, the Court finds no reversible error in the Appeals Council's decision not to remand this case back to the ALJ because Plaintiff has a complete inability to bend. In his decision, the ALJ noted that the record does not "support [Plaintiff's counsel's] hypothetical question as to the Claimant having no ability to bend. There is no evidence of a back problem; and no apparent reason why the Claimant cannot bend." [R23]. Here, Dr. Goodman's treatment notes do not show that Plaintiff suffered from a complete inability to bend. On February 17, 2003, Dr. Goodman noted that Plaintiff was "best suited for a sedentary type position" with "no climbing, kneeling or squatting." [R123]. Dr. Goodman makes no mention of Plaintiff having an inability

to bend. [*Id*.]. Thereafter, Plaintiff was placed on these same work restrictions until August 28, 2006, when Plaintiff's squatting/kneeling restriction was removed. [R121-22, 410, 425-27]. Additionally, on October 31, 2005, and August 28, 2006, despite there being on the preprinted form a block to check with regard to bending limitations, Dr. Goodman did not note on his assessment forms that Plaintiff had any bending restrictions. [R425-27].

The Court notes that Dr. Goodman's April 4, 2003, assessment does state that Plaintiff cannot bend or squat at all. [R393, 398]. However, as discussed above, Dr. Goodman's treatment notes are not supportive of a total inability to bend. Further, the October 2005 and August 2006 examinations and evaluations do not limit Plaintiff to any bending restrictions. [R425-27]. Moreover, the September 2006 assessment, which Plaintiff bases his entire argument upon, does not show that Plaintiff had a total inability to bend. Rather, Dr. Goodman states that Plaintiff can "rarely" bend. [R407]. This assessment does not preclude Plaintiff from having to bend on occasion, as the VE testified to at the hearing before the ALJ. [R486-87]. Thus, the Court finds that substantial evidence in the record as a whole supports the Appeals Council's decision to deny review on this basis.

AO 72A
(Rev.8/8
2)

Finally, Plaintiff claims that he is precluded from working because he has a need to elevate his leg to relive the pain and swelling. This contention also has no merit. First, as discussed in the section dealing with the application of the pain standard, Plaintiff's complaints of disabling pain and the need to elevate his leg are not fully credible after December 1, 2003, because there is no medical evidence to support such a claim. Second, Dr. Goodman makes no note in any of his treatment notes that Plaintiff had a need to elevate his leg until his September 11, 2006, RFC assessment. [R121-37, 408, 404-30]. This assessment is inconsistent with the April 2002 and 2003 RFC assessments, which make no mention of Plaintiff needing to elevate his leg, [R389-99], as well as the August 28, 2006, examination and assessment where Dr. Goodman specifically indicated that Plaintiff did not have a need to elevate his leg. [R427]. Third, there is no apparent basis for Dr. Goodman's September 2006 assessment that Plaintiff had a need to elevate his leg as there is no indication in the record to show that Plaintiff was examined between August 28, 2006, and the date Dr. Goodman completed his September 2006 assessment. Therefore, even considering the Dr. Goodman's September 2006 assessment, the Appeals Council's decision to deny review on this basis is supported by substantial evidence. *See Hummel*, 2007 WL 2492460 at * 7 (holding that the Appeals Council did not err in denying

41

AO 72A
(Rev.8/8
2)

review because "Dr. DeGeronimo's treatment notes are not indicative of totally disabling headaches. Therefore, even considering the November 2005 assessment, the Commissioner's decision to discount Plaintiff's testimony regarding her headache pain is supported by substantial evidence.").

The administrative record as whole contains substantial evidence supporting the Appeals Council's decision to uphold the ALJ's partial denial of benefits. Accordingly, the Commissioner's decision is **AFFIRMED** on this claim.

## VIII. CONCLUSION

In conclusion, the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment for the Commissioner.

**IT IS SO ORDERED and DIRECTED**, this the 26th day of September, 2008.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)